James, this is Methode Electronics v. The Workers' Compensation Commission, 3090832. Counsel, please. Thank you. My name is Denny Nell, Nellie Kelly. I'm here on behalf of Methode. It's a pleasure to appear before you, Counsel. This is a very narrow issue, very, very narrow. We're talking about two weeks of lost time during a layoff period from October 9th through October 22nd of 2006. And I'm going to be very candid with this Court, as I always am when I appear before you. It's been a while since I've been here. But there is no dispute, and I'll come right out front and say this out of the chute. There's no dispute. At this time, the lady was not an MMI, and she was on a light-duty restriction. Now, I say that now because since we've tried this case, we've had the interstate scaffolding case come down. And the Court's aware of it. Counsel brought it forth in his brief. So, when this case was tried, we've got to understand that this lady was on light-duty work. The doctor released her to come back to work. She came back to her cell, her group of people that she worked with at the time, and she was able to perform her job within that cell group. There was not a specific light-duty job that was created for her. She went back to work within that cell. That cell is a group of people that work to make manufacturing parts for this particular company. Now, that entire cell was laid off for a two-week period and included her within that layoff. And once again, this wasn't a separate light-duty job, which we do provide if the person can't go back to work within that cell, because there's various jobs within the cell. The entire cell was not working?  Okay, so then it's the company's policy, then, not to pay it while the cell is not working? That is correct, sir. Is that the law, however? The fact that the incapacity is ongoing during a time when the employee, for some reason, is not receiving wages, I mean, the fact that the cell's not working, is that controlling? Well, let me start. Based on the interstate scaffolding case, that creates a problem. Right. I mean, I'll be kidding. That's what I meant. I'm not, you know, we've all done this for a long time, and I acknowledge that fact. But you have to judge our facts at the time I tried this case, before the arbitrator, and when it went up to the commission. Because the second issue is, we were hit for penalties and attorney's fees, under section 19L, 19K, and the 50% plus the 20% attorney's fees. And, in my opinion, I won this case at the arbitration. The arbitrator agreed with me on those set of facts, and we distinguished. We had not had a factual case similar to this. There was the Granite City case, which is different. There's the Whitney production case. This is all before interstate scaffolding. So we have to view this case, I think, especially on the penalties issue, at the time that we tried this case. I think the law of the interstate scaffolding case may very well be controlling on the two weeks of loss. Right, and that would trump the company's policy, wouldn't it? I think that's right, to be candid with the court. So you're acknowledging that there should have been some compensation for the two weeks she was off? Based on the current case law. Right. I can't say that, you know, I could come up with theoretical approaches, but interstate scaffolding says, if you're not an MMI, and you're on light duty, and you're not working, you've got to be paid. I don't care whether you've been fired for cause or whatever the issues are. And we appreciate that acknowledgement. Then how does this bear on the penalties? Well, I think when you have to go back to this particular case when it was tried, we presented evidence that was a good faith basis for our policy. We had followed it. We'd done it. And when you look at the Whitney production cases, the Granite City case, the Freeman case, all of those cases, those cases are factually different than what we presented to this arbitrator and to the commission. And in our reply brief, you know, we do present to you, I can't say that it's totally authoritative from an appellate court standpoint, but a case, the Gonzales v. ITT case, that is the industrial commission decision, where the arbitrator in that case in 2009, November of 2009, the commission affirmed a decision where there were people who were on light duty, and then the regular group of staff people, everybody was light off. And the arbitrator in that case decided that they're not entitled to TDD. That case was affirmed by the commission. It's a Gonzales case. It's illustrative of what we are facing at the trial level and at the commission level when that decision technically is inconsistent with the other panel's decision in my case. Did you argue the case before the commission? Yes, I did. Did you make that argument to the commission? No, because that case wasn't decided, sir, at the time. In other words, when we argued our case, the Methode case, to the commission, the Gonzales case had not been decided by that commission. We were not aware of that case until after the fact, you know, after our case was argued. So you seem to be saying, and obviously we looked at the commission's decision, that the argument or what happened here was a good faith effort, was not intended to be vexatious based on the law and the facts as you saw them at the time. Right, as we saw them at the time. And that's what you have to look at from a standpoint of, I think, when you're assessing penalties. I mean, I understand why penalties are there and so forth and so on, and they're not, you know, they're not to be, you know... So you're saying basically, to summarize it real briefly, in the context at the time when your clients took the actions that they took that had consequences for this claimant, they do not fall under the policy or under reasonableness of awarding penalties. Right, I think we had, you know, if you look at the Board of Education cases on penalties, objective reasonableness, those kinds of facts, I think that... The policy you had turned out only two weeks of TTD cutoff. Correct. But we could have had an incident where somebody would have been cut off from TTD for two years. Well, that's hypothetically possible. But that goes into your determination of how good faith your policy was, that you were willing to take that risk for the employee. How do you justify that? Well, if you apply it across the board, what we're trying to do is, you know, if we created a special light-duty job, you know, something outside the cell, that's a different situation where we would pay TTD if there was a layoff in that situation, okay? But when you have them go back into your cell and are doing their regular job within the cell, even though they're on light-duty, the job that she was actually performing when she was on light-duty was a job that she could do with her restrictions. So she was doing a regular job. She wasn't, like, sorting envelopes or sitting over counting, you know, invoices. She was participating and performing within that cell group, which is an important parcel of the whole process, okay? And those jobs vary within that group. I'm not saying that she could have done every job within that cell, but... Under your policy, she stays off TT until that cell comes back, even if there's light-duty somewhere else in the plant. Well, I mean, I guess that we didn't have to. Yeah, but, yes, that would be true in the sense that, but that one, you know, this wasn't a general plant layoff. This was not, you know, this was a cell layoff because they made enough parts for this particular process. They didn't need that cell for a period of time, and it was two weeks. I mean, you know, if you look at the record, there was another layoff in December for about a week due to the holiday season based on workload. So it's not like a total shutdown of the plant. Now, if you look at the Gonzalez case, you know, that layoff occurred with every employee in that plant for about, I think it was about three or four months. I don't remember exactly the facts. It wasn't a two-year period, okay? So when you consider the facts, I mean, you know, in light of the interstate scaffolding case, you know, I've got problems with... Well, you would certainly have problems with applying your policy after interstate scaffolding. What occurs to me is the real question in this case is whether the following of the policy is unreasonable. The policy itself is unreasonable prior to interstate scaffolding. Now, it doesn't make any difference whether the layoff's two years, two months, or two days. The question becomes, is the policy reasonable or isn't? And if the policy is reasonable, the fact that it's wrong doesn't mean there should be an award penalty. Right. So we get to the question of whether the underlying policy itself was unreasonable at the time that this occurred. What's your best case to say that you could do what you did? Well, the best case for that, in my opinion, is that you are putting that worker who's on light duty in the same economic position that you are putting people who are not at all off work. You're not distinguishing between the two sets of people, and you still have those people on light duty work, and they are still capable of applying for additional benefits outside the Workers' Compensation Act. Now, Dishner's attorney covers this unemployment issue quite extensively in his brief, and I'm not sure that's really a significant issue, but, I mean, he covers it, and I'll let him address that issue about the appropriateness or non-appropriateness. Well, I suppose the core of the argument is, if she hadn't been injured, she would have been laid off and wouldn't have been paid. That's true. So, she's not losing the money because of the injury. Right. She's losing the money because of the economic situation. Because of the layoff. So, I suppose the argument is, it's reasonable for the employer not to pay her because the loss of income has nothing to do with the injury. Correct. And also, just so, I think it's important, I think it's different if you create, like, a special light-duty job outside the normal work area where the person is working, like, sorting the envelopes and that. I think that's a distinction, because you want to try to get the people back into the same group of people that they're working with when they're on light-duty work. And when I say light-duty, now, this job that she was performing, she was building these slide things, and she'd done that job before. It's at page C101 of the record about her saying that she had done this particular job before. Her original job required a lot heavier work. But the point being is that you can still perform a job with restrictions, but you're performing that job full-duty. There is a distinction, and I think it's a very important distinction to be made. What makes her different from the other laid-off people is she can't go out and get that same heavy job that she could do prior to her injury. She can only go out and get some light-duty job that may or may not exist. She's still injured. There's no question she's still injured. But you've got to understand in this manufacturing industry and business that these layoffs are going to occur occasionally. I mean, so it's not like, from my perspective, based on the tenor of the record, these are temporary layoffs. Maybe this was different in economic times when this took place. It goes without saying that there are a lot more layoffs now than there were back when this case was tried. But these are temporary layoffs. These aren't plant shutdowns. And those cases are factually distinguishable. But the whole point being is that I think their policy was reasonable, objectively reasonable. And so the problem I have is awarding the penalties. And, plus, the arbitrator thought our policy was proper, awarded at the original arbitration level in our favor. And then we go to the commission level, we get reversed, we get hit for penalties. Now, I realize the commission is a brand-new fact finder, so I understand that. But I think you also have to take into consideration that arbitrator's decision, that he agreed with us. And to be quite candid with you, it's a little bit difficult to swaddle, and I'm the lawyer that tried the case, to win a case at arbitration, get it reversed by the commission, and then get hit for penalties, when that was never an issue. I mean, it was an issue with the case, but it's kind of like, well, it's a very unique scenario, let's put it that way. It's not very pleasant, but it's part of the practice of law. So I would ask that you reverse the penalties issue. I think I see the writing on the wall, for lack of a better term, with respect to the two weeks of TTD based on the interstate. We're talking about, in essence, this appeal is concerning less than $3,300. Yes, sir. But a very important issue, as the court is well aware. So we're not always talking about actual dollars, we're talking about legal issues and penalties and principle as well, sir. Gentlemen, thank you very much. Counsel, please. Good morning, Your Honors. Good morning, Counsel. May it please the Court. When the commission makes the decision that the respondent is entitled to or excuse me, the petitioner is entitled to receive penalties based upon the respondent's behavior, Keep your voice up just a little, please. Pardon? Keep your voice up a little, please. I'm sorry. When the commission makes a decision that awards penalties against the respondent based upon its behavior, it's doing so based upon the finding that the respondent has not behaved in an objective, reasonable fashion. And the problem here is that I think the respondent's argument is based on its justification, it's based on its own subjective view of the record and its own subjective view of the law, even its own subjective view of the law at the time the case was tried, which doesn't really match with an objective reality. Well, cutting to the chase, as my learned colleague alluded to earlier, if the claimant hadn't been injured, was in a cell that was laid off completely, what was the prejudice done to her? The prejudice is the fact that she cannot go out and find another job, as her co-workers would be able to do, because she's injured. And also, she cannot necessarily go and receive unemployment benefits, as her co-workers might, because the law for unemployment compensation requires an individual to be able to work and be available for work. And there's a case which I cite in my brief which denied unemployment benefits to someone. Well, what is her, under the Act, what would be her remedy? Okay, she's laid off. Are you telling me that she would never be able to get further TTD? No, obviously her remedy is TTD benefits, and counsel has conceded that. I think her remedy was clear that her remedy was for TTD benefits as of the time we tried the case. The Whitney Productions case is squarely on point. I don't see a difference in that case that makes a difference. Why is the policy vexatious? Why is it unreasonable? It's unreasonable because it was not following the law as announced by this court in Freeman United Coal and in Whitney Productions. In both those cases, they stated that the determination of whether someone is entitled to receive TTD benefits is based upon whether or not their condition is stabilized, and whether or not they're able to work. In this case, counsel has conceded that her condition hasn't stabilized, and she wasn't able to work because she had restrictions. This court had told us that under that scenario, told us in Freeman and told us in Whitney, that someone is therefore entitled to TTD benefits. There's no contrary authority to that. Prior to interstate scaffolding, there's no contrary authority to that. But it's not quite that simple. I mean, there are cases that would suggest that if an injured worker refuses employment that's offered by the employer, they're not entitled to TTD. That's even if they haven't reached MMI. They get no TTD because they voluntarily refused work. In this particular case, they're turning around and saying, look, she wouldn't have earned any income had she been working. I mean, she would have been laid off. Now, right or wrong isn't the issue. The issue is reasonable or unreasonable, and that's the issue. I mean, there are cases where injured workers don't get TTD. I mean, we were wrong interstate scaffolding, according to the Supreme Court. We said that if they get fired for reasons other than they get no TTD. If, if I may, Your Honor, an injured worker is supposed to be receiving TTD if they have restrictions that keep them from working. And you point out a scenario where they may refuse a light-duty job, and that's obviously not this case. I would submit that the issue is whether the Commission's decision awarding penalties is against the manifest way of the evidence. Well, I'll ask you a question. Interstate scaffolding. If that employer had a policy that if you get fired for reasons other than work-related, we don't pay your TTD. Are you entitled to penalties? Would that petitioner have been entitled to penalties if the employer had that policy? Well, I don't really want to... I mean, that's another injured employee who has not reached MMI. I mean, would that be a reasonable or unreasonable policy? We were wrong, five of us. Right, but obviously your, not obviously, but your decision in interstate scaffolding was based upon the bad conduct of the petitioner in interstate scaffolding. They were fired for cause, and your decision was someone who was fired for cause should not be receiving TTD benefits. But the Supreme Court turned around and said, it's irrelevant. Right. It's totally irrelevant. But my question to you is, would it have been unreasonable for the employer to have a policy? He would have been wrong, but would it have been unreasonable? In interstates, I'm sure they have the policy of we're not going to pay you TTD if we fire you for cause. Yeah. Well, that's what they did in interstates. Interstate. And no penalties were even addressed because I don't think that there was the legal authority. But my question to you is, it was an injured employee. The employee had not reached MMI. Now, shouldn't there be penalties if they didn't pay? But there wasn't the legal authority in that, to support that fact situation. There wasn't a prior case for someone who had been fired for cause for their own bad conduct. Is there a prior case for a person who was laid off? Yes. Where we said, got to get paid, got to get TTD, even though you're laid off? In Whitney Productions, Your Honor, the worker was laid off, and this court found that they should be entitled to TTD benefits because they were disabled, and the fact that they were unable to earn income, irrespective of their disability, was irrelevant. And that case was decided before the dispute here arose? Yes. It's actually attached to the appendix because it was attached to the arbitrator's decision. Pardon me. 1995 case, the worker was injured. He continued to work, didn't do all the duties of his job, but continued to work at his normal job, was laid off, and was awarded TTD benefits. In this case, the Commission awarded penalties for mistrown, and you could say that its decision is not against the manifest wit of the evidence, and that is the standard we review the Commission decision for awarding penalties, based upon the prior authority of Whitney Products, Freeman United Coal. Also, the Commission has dealt with this issue frequently in other cases that haven't come up to the appellate court, where someone is laid off while also disabled, and the Commission has awarded TTD fairly consistently, and they've awarded penalties consistently. And I did not cite those in my brief. Obviously, the Commission's decision does not bind you, but that's something the Commission deals with on a regular basis, and so we can rely upon its expertise in determining that this issue is something that the employer should be aware of. The rule is something the employer should be aware of. It's not objectively reasonable, and that's why they awarded penalties. The counsel pointed to the Gonzales case, the 2009 decision. The Gonzales case is not really instructive to us, because that is a case that found no accident. That's a Commission decision. It's a decision affirming an award of an arbitrator. There's no commentary from the Commission. The arbitrator issued a decision that said, I don't believe there was an accident. There's no benefits due, because there was not a compensable accident. And even if there wasn't an accident, then the petition is not entitled to TTD because of the general layoff. So it's a Commission decision that has no precedential value, correct? The Gonzales, obviously, the Commission doesn't bind you. Does it have any precedential value? The Gonzales decision? Any Commission decision. It has precedential value on the Commission. What about this tribunal? No, it does not. Obviously, the lower court, the Commission decision, this one is something you review with deference. Pardon? I'm sorry. I just want to point out that the Gonzales decision didn't really, the Commission didn't even make a specific finding. It simply affirmed the decision of the arbitrator. In this case, Ms. Trone was working a light-duty job. The Commission found she was working a light-duty job. It may not have been a job in the office sorting papers, something to sort of deliberately make work, but it was not her normal job. It was something she had done before when she had run out of work to do, according to her testimony. There's evidence in the record that the Commission can rely upon to make a decision that her job was a light-duty job. Her testimony was that it was not her normal job. It was nobody's normal job. How does this relate to the issue of penalties? Counsel is arguing that their position is reasonable because they have, their policy was reasonable because people who were on light-duty jobs get TDD, but she was not on a light-duty job. The Commission found she was, and that decision is supported by the record. Thank you, Your Honor. I don't have anything for that time. Arnold? May I just make one comment? Sure. The Whitney Productions case that we're talking about, that was one individual who was laid off. It had nothing to do with, you know, a group or a cell or a total scenario like we have here. And actually, we relied upon the Whitney Productions case as part of the arbitration decision and presentation of our evidence that our facts were different than that. So therefore, and he relied upon it. So I bring that up just to say, there's no, from my review of the appellate court case law, the Freeman case had nothing to do with layoffs. There was a Ford Motor Company case that cited it in the briefs. And in that case, everybody who was on light-duty were the only people that were laid off, and TDD was awarded. That's different from us. And so I think there is a distinction between the case law as it existed at the time and the way we presented our evidence to objectively look at the scenario with respect to the pimpers. Yes, sir? What case would you cite that normally we see it with regards to being vexatious if you have a Section 12 examiner and it says somebody's hurt? Right. Okay. What case would you refer to that an interpretation of the statute could be relied on as? As being objectively reasonable? Yeah. Just to say the same kind of comparison. Well, I guess, because this is not an IME case. No. And you know that. And I guess I need to, in our argument section. Lawyers are very inventive. I know. There would be no end to an inventive, a good argument. And I guess what we relied upon primarily was that went through the 19LK and Section 16 standards and really extrapolated from that. I'm not sure that I have a case that's right on point specifically to cite to you. I apologize for that. But I don't know that there's been a case that, or penalties that's very similar to this. We're just going with the general penalties law to try to persuade you to eliminate the penalties in this particular case based on the facts and the laws that existed when we tried to do this. Thank you very much for your patience and time. The court will take the matter under advisory.